Thank you and good morning. Before we begin, Judge Broussard and I again want to welcome Judge Higginson from the Fifth Circuit and thank you so much for coming to visit and helping us with our busy docket. And also, just for planning purposes, we will take a short recess after the first two arguments. With that, we begin with Hunter v. City of Federal Way. Good morning. Thank you, Judge Graber. May it please the Court, Howard Goodfriend, representing the appellant, Officer Durrell. I'd like to reserve five of my 15 minutes, if I may. The jury considered only a single claim for excessive force under Section 1983 against a single defendant, Officer Durrell. Judge Lasnik, having dismissed on summary judgment the wrongful arrest claim because he held, as a matter of law, Officer Durrell had probable cause to believe a trespass occurred because his partner, Officer Schmidt, stated that the convenience store clerk had not consented to misdemeanor assault. The claim for excessive force required the jury to determine under Graham whether this neck restraint was objectively reasonable in affecting the arrest under the totality of the circumstances. Now, without reinstating the claim for unlawful arrest and without modifying the pretrial order, without instructing the jury on probable cause, the district court allowed the jury to find liability and award punitive damages of $600,000, which it reduced to $360,000 post-trial. On the basis of plaintiff's contention that Officer Durrell lacked probable cause and conspired with his fellow officer to manufacture a trespass. Well, didn't she? All she did in that regard, as I understand it, was she instruct, she didn't, she just left out the word lawful in the arrest as to the nature of the excessive force, and she, but she instructed the jury that whether it was lawful was for the judge. So she certainly did not ask them to decide that. She asked them not to decide it. She didn't ask them to decide it, but she basically allowed them to presume that the arrest was, in fact, unlawful. Well, she allowed them to presume that it didn't matter whether it was lawful or unlawful, which is accurate. Well, it actually is a factor, I think, in, under Graham in terms, and under Villasquez in terms of whether the amount of force is reasonable or not objectively from the officer's perspective. And this is sort of the converse of the Villasquez problem, where the court held that in erroneously dismissing on CR 50 an unlawful arrest claim and instructing the jury that the arrest was lawful, the court thereby prejudiced the excessive force claim. This is sort of the opposite situation, where the trial courts effectively allowed the jury to presume the arrest was unlawful with no guidance and then allowed. But she specifically didn't allow them to presume that it was unlawful. She said it wasn't up to them. manufacturing the trespass was the most startling aspect of the case. Well, manufacturing it meant that they, as I understand it, they manufactured it in the sense that they went and decided that they were going to get the person in the store to ask the person to get trespassed and then come out and say that you're getting trespassed. It turned out that she didn't even say that, but leaving that part aside, they manufactured it in the sense that nobody asked them to do this. They went and created it. Well, Officer Schmidt went in and asked the clerk, and he came out and said they don't have permission to be there and announced that they're going to be arrested for trespass. The undisputed facts before Judge Lasnik in terms of why he held that the arrest was lawful and why he held that probable cause existed as a matter of law didn't change at trial. I mean, Mr. Hunter and Mr. Bosian were close enough to the arrest of the driver that Officer Hunter directed them to back up. They were told three times. Mr. Hunter picked up the wallet and was again told to step back because he was interfering with the crime scene. Officer Durrell did not talk to the clerk. Officer Schmidt did, and he emerged telling them to leave or they'd be arrested. Mr. Bosian at that point said, are you serious, laughed. Mr. Hunter didn't leave, told the officers he was going to leave after making a call. Did this U-turn instead of directly leaving. But I guess I'm just, we know the facts. What's the argument here? Fourth Amendment issues are often revisited once trial facts elucidate the entire context. Is your argument that the trial judge was bound by her co-equal colleague? What's the legal argument? The legal argument is that if you're going to allow the jury to make an independent assessment of probable cause or determine whether the arrest is unlawful or determine whether the force is excessive based upon the fact that the arrest was unlawful, you should at least tell the jury what probable cause is. You should at least. Was there a request for a jury instruction in that regard? No, because she kept saying she was not reinstating the claim throughout trial. But what we did. She just allowed the full context of the whole encounter to develop without prejudice to either side. But I don't want to swallow your time off that. You have multiple evidentiary arguments. The one that interested me most was the closing argument propensity evidence claim against your client. Did you object at that time? Did we object at the time of closing argument? No, but we objected continually throughout trial. But throughout trial it was used as impeachment evidence. At least that's how I see it. Then your argument has persuaded me so far that it becomes egregious in closing argument. But if that's an isolated error, would it be only subject to plain error review? Well, it's not an isolated error because it wasn't admitted for impeachment purposes only. It was relied on for one purpose. And if you look in page one of the appellee's brief, you can see what it was admitted for. It was admitted to show that Officer Durrell has admitted that he can't control his use of force. Well, it was admitted because he testified himself that he does control his use of force because he follows his training. So that's why it was admitted as cross-examination of his statement that he does control his use of force in accordance with his training. And that is not, you know, nothing in that mobile communication really impeached that. What he said was that. Did you ask for a limiting instruction? No, we asked that it be prohibited because it was. But if a witness gets on and says, I follow my training always, but then there's an earlier statement and prior inconsistent statement that, well, I get out of control pretty frequently too. That sounds like just straight contradiction evidence. Well, it wasn't used as contradiction evidence. It was used to cross-examine the officer drills expert to basically say that. Would your opinion about his use of force here change if you knew that, you know, he has been disciplined for not being able to control his use of force? Also not accurate really. He was, you know, the district court believed he had been suspended from his position as a trainer because of that. That was also inaccurate. So it was misused in multiple ways throughout trial as plain and simple 404B evidence. And it was relied upon in closing argument. It was relied upon by the district court post-trial. It's not actually 404B evidence, is it? It's being used as 404B evidence. Technically, no. It's something he said. It's something he said. Yeah, but it wasn't used as evidence of actual particular incidents. It was used to show his character in terms of a propensity for the use of force. But that's not what 404B addresses. It addresses specifically prior acts. Well, it referred, you know, it was used by the plaintiff to wrongfully to indicate that he, in fact, had used force and does use force not just on one occasion but on many occasions and that he can't control it. I think it's even worse than 404B evidence because it's not even a particular specific. It's worse than 404B evidence but it's not 404B evidence. So you have a 403 argument essentially. Well, I mean, it's definitely for, you know, it was basically misused to prejudice the jury to show that he has a propensity for use of force. It was improper character evidence. It was improper evidence based upon an allegation of prior acts that really didn't exist. It was a communication between officers, and he was disciplined for the unprofessional use of the mobile digital computer, not for the use of force. Does your qualified immunity argument depend on the proposition that a choke of an airway is trivial force? No, it does not. It depends upon the fact that it was resolved on an inferences of disputed facts that we should have been allowed to inquire of the jury about, A, whether he was resisting. Was he pulling his arms away from Officer Durrell? Was he approaching other officers at the time? Was he opening his car door and did Officer Durrell have a reasonable? So you're saying reversible error because the district court didn't let you explore those points? I didn't see that in the brief. It didn't. Well, we did challenge the failure to give the special interrogatories. The point was it was given the total reliance at trial on the manufactured trespass theory, special interrogatories in this case were especially important because it would have directed the jury to resolve the facts that actually were in dispute. Is there any case law supporting the notion that there is any situation in which special interrogatories are mandatory? They're not mandatory. They're discretion. But in this case it was an abuse of discretion given the nature of the claims that were asserted here. Is there any case that has ever held that it was an abuse of discretion not to give special interrogatories? I don't know of any in the Ninth Circuit. When we cited the case where on remand this court basically suggested that the district court do so. Well, suggested, but never has there been a reversal based on a failure to give. Not directed. All right. So essentially your argument is that you're not, as I understand what you just said, if the record is viewed in its totality to favor the defendant, the plaintiffs, then essentially you don't have a qualified immunity argument. What you're saying is the jury may have found some of the facts one way and some another way and then you would have a qualified immunity argument and you should have been able to get that out from special interrogatories. Well, I think there are two arguments on qualified immunity. One is the plaintiffs haven't and the district court failed to identify a case on point or even close to on point in which a brief neck hold against a suspect in effecting an arrest constitutes excessive force. The second argument is given the nature of this claim in which the probable cause issue was what turned the jury's verdict basically, it was especially necessary to focus the jury's attention on the one claim at issue, which was the excessive force claim. With that, I think I'll reserve the rest of my time. You may reserve. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the court, Sidney Tribe here on behalf of the appellee Josiah Hunter. First, I'd like to address the issue of this matter of the probable cause determination. Counsel, if you don't mind, I'd like to start with qualified immunity because just speaking for myself, that is a point where I have difficulty with your argument. The Supreme Court has more and more required the spotted cow. They're requiring something that is extremely close to let every officer know that in this particular circumstance, this particular force would be excessive. And I was unable to find any case from the Supreme Court or the Ninth Circuit that dealt at all with choke holds, brief or lengthy. And am I missing something? And if not, why isn't that doesn't that require us to reverse? I do think that the question of whether or not a choke hold is non-trivial force is clearly established. By what? By cases. Well, certainly the court in Atkinson thought that it was well established. In Mattos v. Arrigano, there was a statement. Which is about tasers, right? Yes. It's entirely about tasers. Yes, but this court mentioned that tasers were less than actual. Well, this court didn't mention a separate opinion that didn't garner even a plurality, said it in passing. So why is that clearly established law? It's clearly established on the basis that if the courts have stated, even if it's the question of whether the district court has stated it, if it's so clear that something is non-trivial that it hasn't even managed to make it up, I mean, choke holds have been in use for however, you know, 50 years. So you think this is one of those exceedingly rare cases where the Supreme Court would say that a 9- or 10-second choke hold that didn't end up resulting in injury requiring medical attention, you think that's so obvious that the Supreme Court would say that every reasonable officer knew that? Yes, absolutely. Because it's non-trivial force that could be potentially deadly. But to back up a minute, as I read the case law, in qualified immunity, does there need to be a choke hold case? As opposed to my understanding is that the cases have dealt with different kinds of force without saying you need a case about that particular kind of force. That's correct, and this Court has said that. And in Gravel at Blondin, the discussion that was the Supreme Court said in City of Escondido that the Gravel at Blondin State and the right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established. And that's another TASER case, and TASERs are quite different. Yes, and TASERs have been debated even in the case law after they were established as non-trivial force. It was debated as to whether or not a momentary application versus a long application was considered permissible. I thought that the Ninth Circuit had a substantial body of law where restricting the breathing of someone being arrested. So Drummond, Barnard. I thought it's pretty settled without the Gravel-A hyphen name, which I can't pronounce. Blondin, yes. So why aren't you relying on those cases that seem directly on point? When police officers put someone into anything that obstructs their airway, that's severe force. I agree with that, Your Honor. I was trying to address Judge Graber's question as to whether or not a chokehold, the term chokehold has been addressed in Supreme Court case law or Ninth Circuit case law. I agree with you. There's a fair number of out-of-circuit, although largely district court cases. Is that right? I'm sorry, Your Honor? I said there are a fair number of out-of-circuit, although largely district court cases about chokeholds. Yes, that's correct. And they've gone both ways, have they not? I don't think they've gone both ways. In the instance of passive resistance. Yes. I mean, there's a recent case where somebody was doing something violent in the school. That's different. Right. But here we have no claim. Well, we may have a claim that he was resisting, but there's also the evidence favoring the plaintiff was that he wasn't resisting. The only resistance that was offered in this case, and Your Honor is correct to note that the question of whether this is trivial or non-trivial force or whether it's excessive force has to be put in the context of what the officer knew at the time. And what the officer knew at the time was that the only resistance this person was offering was when he was grabbed from behind by the officer, the officer felt his arm tense. But that's not really right, is it? I mean, I had much more difficulty with the passive resistance concept generally because it was undisputed that your client told the police officer as soon as I make my call. Well, if we assume the police officer has probable cause to arrest, it surely can't be a citizen's prerogative to say, well, you can arrest me once I make my phone call. However, you also have to look at it in the context, and this is where the Sheff case that I cited from the 11th Circuit is particularly helpful. You have to look at it in the context of whether or not the officer's decision to arrest was manufactured pretextual. But that's walking into the very difficult area they're pointing out, which at this point it appears we assume, I think, that his client did think there was probable cause to effectuate a trespass arrest. The question of, I'm sorry, whether my opponent thought that there was probable cause to arrest? Well, his client didn't walk in and speak to the clerk. Right, but you have to back up and go from the beginning, which is his client ordered my client to stand on the AM-PM property. This was an order from a police officer. Go stand over there on the AM-PM property. But if that's your qualified immunity argument, it does sound like you're trying to relitigate the probable cause issue. I thought we were just assuming that the officer did have probable cause. So the question is, then, was there resistance? And I'm asking you, isn't it just resistance? I have real difficulty with the word passive. When a citizen says, after I make my call. It is not resistance to an order to leave to say, I will leave. I need to make a phone call. And then to go to your car to leave. He didn't say, I need to make a phone call. He said, as soon as I. And that's very exact, but that's telling a police officer, you can do your duty with the accident scene and getting bystanders away and trespassers away, but I need to make a call first. There's no evidence that the officer told him or warned him, no, you cannot make a phone call. No, you must leave immediately. But also, I guess I had understood the resistance to mean resistance to arrest. And although he said, I'm going to arrest you, he didn't arrest him until he got to the door. And at that point, there was no resistance. That's absolutely correct. So at the point he was using the force, there was no resistance to the arrest. That's exactly right. He said, I'm going to make my phone call. He walked to his car to leave and then was arrested. And at that point, offered no resistance other than, again. Did he say, officer, I'm going to my car to leave? How do we know that officer knew? It could easily be interpreted the officer here, as soon as I make my call and the guy walks off but doesn't leave the premises. Wouldn't an officer then be able to use forcible to see someone forcibly? Should a reasonable officer ask him, is this your car? Are you leaving as I instructed you? Well, is there a clearly established law that tells an officer they've got to clarify whose car? These are bystanders. They're not even the ones involved in the accident. Officers don't need to sort of accommodate their phone calls and clarify which is their call. But when he was arrested, wasn't he opening the door of the car? Yes, he was. So he was opening the door to the car. The officer came up from behind him, shoved the car door, pushed the car door, closed. He's literally getting in his car to leave as he was ordered. I don't know what else he could have possibly done to comply with his officer's every request, despite the fact that he was nothing but an innocent bystander and a good Samaritan who had assisted in returning at the instructions of another bystander. Were you the trial attorney below? No, I was not. How can you possibly justify the closing argument use of the impeachment evidence? And the critical question for you I'm asking here now is do you acknowledge that was wrong and we should assess it for harmlessness, or are you somehow saying that that didn't veer directly into propensity evidence? The evidence was, first of all, the evidence was admitted. That's not my question. I've seen this often. When lawyers get something admitted for a limited purpose, hear impeachment, then they get to closing argument, last word to the jury, and suddenly they say, well, ladies and gentlemen, we know what he did because he does this a lot. It's his own words. I'm quoting him. He gets out of control. That sounds like classic propensity evidence. Now, I just want you to tell me no it's not, why not, or yes it is, but it was harmless. It is not propensity evidence. It is not, as Judge Berzon was pointing out, it is not 404B evidence because it is not evidence of a prior crime, wrong, or act. It does not fall under that rubric. It is a statement by the defendant that he cannot control his use of force. It was properly admitted to impeach his testimony that he always follows his training, and it was properly used in closing argument. And without objection, the standard in this court is plain error, whether or not it was plain error to not undo this trial on the basis of it. The public should have said in closing argument, and I guess against which you would determine harmless error, was what the lawyer should have said was something to the effect of, he said he always follows his training, but then we, but that doesn't seem to be true because he said X, and that would be okay, right, because that would be exactly repeating the context in which this came in. So the harmless error question is whether the difference between that and what was actually said was harmless. Again, just to clarify, it's a plain error standard as opposed to a harmless error standard, but, yes, there is no harm that they can point to. There's no prejudice in having repeated in closing argument this evidence that was properly admitted that was directly contradictory to his testimony at trial. Well, there is a slight difference between what was said and what should have been said, i.e., what was said was essentially, you can refer from this, that he was in fact previously not in control as opposed to he was not telling the truth when he said whatever he said. Right. But that was entirely the point of the judge admitting the evidence at trial was to contradict his statement. The jury was allowed to consider his evidence, his statement, and it was stated in his argument, that he uses force reasonably and properly according to his training. The jury was also allowed to consider whether or not he had made a statement that suggested otherwise. And to morph that into saying that this now becomes evidence that he failed to use his control in the past as an objectionable closing argument, that is not the standard that the court is going to essentially allow him to have the benefit of his statement, his in-court statement, that is contradictory and not allow an argument to be based on his out-of-court statement that contradicts that in-court statement. So the question of whether or not this is propensity evidence, as described in 404B, which relates to other prior crimes, wrongs, or acts, you don't even get to the question of whether it's propensity evidence. It's simply impeachment evidence. Now, even assuming arguendo, that in closing argument, the statement should have been something otherwise. The statement should have been, well, he said this, but then he contradicted himself with this other evidence. Then the question becomes, was there a failure to object? Is that evidence now, that argument, plain error that upends this entire six-day trial? And under the plain error standard, the question of whether or not this is a constitutional violation or whether or not this is something that is so egregious that the entire trial should have been upended, especially considering it was admitted evidence and the jury had heard it, is I cannot think of an authority that would say that that is a plain error. There's all kinds of examples of incredibly egregious closing argument. Using this evidence in this way, even if you assume that it was propensity evidence, which is by no means clear, it does not rise to the level of having been plain error. Unless the Court has further questions, I will relinquish the remainder of my time, and we ask this Court to affirm. Thank you. Thank you. Thank you. I want to address three points in the brief time remaining to me. In terms of qualified immunity, it's abundantly clear that the Supreme Court's repeatedly directed this Court and the other circuits to avoid a generalized notion, particularly in excessive force cases. But most of those, I think all of the Supreme Court cases in which they've said this, are cases in which there is some danger to somebody, and the police have to make a split second or a quick decision about what to do, and therefore the precise clarity of what they should have known about the law is incredibly important. And here, I assume you agree that there was no danger to anybody. This is just a question of a — however you look at the crime in question, it was an extremely minor crime. And the question was, can you use force that is at least potentially deadly? I mean, there's no denial that it is potentially deadly to effectuate that kind of an arrest. And the notion that a — I gather this tactic is banned in Seattle, for example, and in many other places. So — But not in the jurisdiction where this officer was operating. Yes, but that doesn't go to whether it's nontrivial force. I mean, you think an officer would — any officer would know that this is at least potentially dangerous force. And, Your Honor — Do you not know that? In terms of the circumstances at the time, it was also — Mr. Hunter was opening a car door in an area close proximity to another car. Officer Durrell doesn't know what's in the car. He doesn't know what Mr. Hunter is trying to do after he refused his demand to leave immediately. He doesn't even know it's his car. So, I mean, you know, that gets back — To be precise, did he say, leave immediately? You tucked in the word immediately. It didn't seem like he said, you're under arrest. It didn't seem like he warned him. He just said, leave. And then the fellow — There was a dispute — there was a factual dispute about whether he said he was under arrest. But don't we have to interpret the last — Yes, but he did tell him to leave. Absolutely. All right. So — Did he say, leave this minute? No. He said, you have to leave. Right. OK. And he said — and he left. He was in the middle of leaving. Well — At the time he was arrested. Again, again, the point, I think, is in excessive force cases, the level of specificity is important because there's a wide variety of — All right. But the question here — I mean, if you're going to distinguish, you say there's no chokehold case. But there are cases that say using non-trivial force where there's only passive resistance. Distinctly, I mean, to say that sentence in Ninth Circuit cases. So the question is, is there any chance that this officer didn't know that this was at least potentially dangerous force? It's potentially dangerous, but so all kinds of force is potentially dangerous.   So doesn't that make it non-trivial right there? No, because, you know, there are many tactics. And you say the city of Seattle's banned it. The city of Federal Way has not. And if a Ninth Circuit case says it is — Whether it's banned it and whether it's approved it for use in a situation in which there's no danger to anybody and no resistance to the arrest is a different question. Perhaps. But I think the point of the qualified immunity cases is that the officers are entitled to clear notice that a particular type of force in a particular situation is — All right. But they had — you had this Gravelay case which said non-trivial force. So the only question is, is there any chance that this was not non-trivial force? There's — yes. I mean, there actually — it is. Because there was — you know, you talk about Drummond where the suspect was hogtied and officers, you know, sat on his chest for — I mean, it's a completely different situation. Force that is potentially dangerous and even potentially deadly is not non-trivial force? I mean, is there any rational world in which that's the case? Well, not — I would submit that non-trivial force is simply not the proper standard under the Supreme Court process. But it is the standard in the Ninth Circuit under Gravelay. That's a sentence from the opinion. It's a sentence from the opinion, but it lacks the specificity that would give an officer clear notice. Any type of use of force could be non-trivial, really. It's — Well, if you put somebody's hands behind their back and put handcuffs on, which is what you need to do — all he needed to do to arrest this guy, it is presumably not deadly. But putting one's hands around one's neck and pushing on it, I mean, there was testimony in this case and there is evidence — I mean, there's sort of common knowledge that it's potentially deadly or potentially dangerous. Isn't that sufficient? I don't think it is. All right. I don't think it is. Thank you, Counselor. Thank you. The case just argued is submitted, and we appreciate very helpful arguments from both counsel.
judges: Graber, Berzon, Higginson